IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH ALLEN EBERT | : | |
| Plaintiff, | | |
| | | |
| v. | : | |
| | | CIVIL ACTION |
| PRIME CARE MEDICAL INC.; | | NO. 13-0212 |
| NATHAN KALTESKI (DENTIST); | : | |
| NICOLE HEFFNER; DALE MEISEL | | |
| (WARDEN), *individually and in their* | | |
| *official capacities* | : | |
| Defendants. | | |

## MEMORANDUM

**Jones, II  J.**                                                 **March 27, 2014**

### I.    Introduction

Pro Se Plaintiff Keith Allen Ebert brings the above-captioned action seeking damages

under 42 U.S.C. §1983 for what he contends was a prison custom and policy that resulted in an

Eighth Amendment violation for inadequate medical treatment.  All Defendants have filed

Motions to Dismiss for failure to state a claim and Plaintiff has responded thereto.  For the

reasons that follow, Defendants' Motions will be granted.

### II.    Factual History

On September 7, 2012, Plaintiff Keith Allen Ebert was sentenced to 11 to 24 months

(minus one day) at Lehigh County Prison ("LCP").  (Compl. Facts p. 1).  While at LCP, Plaintiff

underwent a physical examination by Dr. Debra Wilson, who was employed by PrimeCare

Medical Inc. ("PMC").[1] While addressing other medical issues, Dr. Wilson informed Plaintiff that he could submit a Sick Call request slip to the dentist if he had any dental pain.  Plaintiff alleges that Dr. Wilson also informed him that the dentist would pull the tooth.  (Compl. Facts p. 1).

Beginning on October 15, 2012, Plaintiff wrote numerous informal Inmate's Requests regarding his broken partial dental plate to prison staff, Warden Dale Meisel, and Health Service Administrator Nicole Heffner, among others.  (Compl. Facts p. 1).  On October 19, 2012, Plaintiff filled out a Sick Call request slip to see Dentist Nathan Kalteski, who allegedly stated "he does not do plates."  (Compl. Facts p. 1).  Between October 19, 2012 and November 13, 2012, Plaintiff filled out eight more Sick Call request slips, stating that he was having increasing chronic and substantial pain when chewing food and was suffering from bleeding gums, severe headaches, constipation, and stomach pain, loss of appetite, mental and emotional stress, anxiety, and insomnia.  (Compl. Facts p.1).

On October 30, 2012, Plaintiff wrote an Inmate's Request to Defendant Heffner, asking for one of PMC's grievance forms or the Headquarters address for PMC. (Compl. Facts p. 2).  Defendant Heffner provided PMC's address but informed Plaintiff that he was to use LCP's grievance system.  (Compl. Ex. C, p. 1).  Despite this information, Plaintiff elected to write a letter to PMC complaining about inadequate medical care at LCP, to which he claims there was "no response."  (Compl. Facts p. 2).  On November 6, 2012, Plaintiff wrote another Inmate's Request to Defendant Meisel about PMC's grievance process and in doing so, incorrectly stated that Defendant Heffner "failed to respond" to his inquiry regarding same.  (Compl. Ex. C, p. 2).

---

[1] Plaintiff has not named Dr. Wilson as a defendant in this matter.  Moreover, Plaintiff's Complaint does not indicate whether he saw Dr. Wilson because of dental pain, or if she was conducting an examination for some other reason and simply mentioned his teeth.  In any event, this information is not dispositive of the issues at bar.

Defendant Meisel reiterated to Plaintiff that PCM did not have a grievance form, and arranged for Plaintiff to speak with Dr. Kalteski and Defendant Heffner.  Plaintiff claims that during this visit, Dr. Kalteski informed him that he comes to LCP "one day a week" on Tuesdays "for emergency services."  (Compl. Facts p. 2).  Plaintiff further alleges that Defendant Heffner became angry at the meeting, asked Plaintiff if his complaints were going to stop or continue, and informed Plaintiff that that if he "signed release of dental information [sic] problem would be resolved."  (Compl. Facts p. 2).  Plaintiff signed the release form.  (Compl. Facts p. 2).

Plaintiff subsequently completed an Inmate Formal Institution Administrative Grievance form and received the following response from Defendant Meisel: "It appears to me that our contracted medical provider is not ignoring you.  The medical issues you describe appear to be of long standing duration."  (Compl. p. 3; Ex. E).   Accordingly, Plaintiff's grievance appeal was denied and the within suit followed.[2]

## III.     Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[2]  Plaintiff has apparently filed at least one other lawsuit in this District against Defendant LCP regarding previous dental issues, which he settled out of court.  (Compl. p. 6).  Defendants do not speak to this, except to say Plaintiff is "an experienced and litigious plaintiff."  (Medical Defs.' Mot. Dismiss Br. 1).

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; accord *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the defendant unlawfully harmed me accusation.") (internal quotation marks omitted).

### IV.    Discussion

The crux of Plaintiff's claims is that he was provided with inadequate medical care and that prison officials had a policy providing this allegedly inadequate care. In order for a plaintiff prisoner to show he or she received inadequate medical care, it must be alleged that his or her medical needs are (1) "sufficiently serious" and (2) that the prison officials or medical official's actions displayed a "deliberate indifference towards those needs." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) ("[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983" but not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."); *Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir. 2004) ("Only unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of prisoners are sufficiently egregious to rise to the level of a constitutional violation.") (internal quotation and citation omitted).

#### a.   Medical Defendants Kalteski, Heffner and PMC

When assessing whether there is a "serious medical need," the court will look to the severe physical issues that the plaintiff alleges in the Complaint. *See Spruill*, 372 F.3d at 236 (allegations that a prisoner's back required "continuous medication, and has caused him

excruciating pain" with instances of collapsing "from the pain twice" was sufficient to indicate a serious medical need). Although the pleadings demonstrate that Plaintiff's allegations of chronic and substantial pain from chewing food, bleeding gums, severe migraine headaches, constipation, stomach pain, mental and emotional anxiety, and insomnia might be attributable to other medical issues, this Court shall construe these allegations in a light most favorable to Plaintiff and his claims.[3]

In determining whether deliberate indifference was exhibited by these particular defendants, there must be a showing that said Defendants knew of and disregarded an "excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Plaintiff has completely failed to satisfy this element. Instead, the documentation attached to Plaintiff's Complaint shows quite the opposite – prison and medical personnel *repeatedly* responded to Plaintiff's Sick Call requests and Plaintiff was being treated accordingly. Plaintiff's Complaint is devoid of any allegations that could potentially establish that Defendants Kalteski and Heffner (on behalf of PMC) knew of and disregarded an excessive risk to Plaintiff's health and safety. Plaintiff's allegations that Dr. Kalteski "did not do plates" and that his dental care only consisted of extracting teeth in

---

[3] Review of the Sick Call requests Plaintiff attached to his Complaint demonstrate that he was also complaining of – and being treated for - non-dental issues throughout this period of time. For example, one request references "stress and spiritual problems," while another states "I need to see mental health phys, increased symptoms mental and emotional anxiety and stress. Headaches, loss of appetite, and not sleeping and severe fatigue." (Compl., Ex. B at pp. 3, 5) Plaintiff was seen and treated with medications for these conditions. (Compl., Section III). Another request seeks "Follow up for constipation. Having pain in stomach." (Compl., Ex. B at p. 7) Plaintiff avers in his Complaint that he has "HIV/HCV" (a Human Immuno-Deficiency Virus and Hepatitis C co-infection) and had seen PCM physician Debra Wilson regarding same. As such, Plaintiff's characterization of the Sick Call requests pertaining solely to his dental issues is unsupported by the record. (Compl. Facts, p. 1).

emergencies, coupled with Defendant Heffner's act of following up with each of Plaintiff's "Inmate's Request To Staff" and advising him of the appropriate grievance system, clearly do not indicate a deliberate indifference.[4]  Similarly, Plaintiff's sweeping allegations that said Defendants denied treatment "that could eliminate pain and suffering" and provided "treatment so blatantly inappropriate as to evidence intentional mistreatment" (Compl. p. 6) are completely unfounded and constitute nothing more than insufficient, conclusory statements.

The Third Circuit has established that "lack of proper medical care," and subjecting a prisoner to "the possible risks of a permanent disability or a fatal or serious injury" is a disregard for an excessive risk of injury that constitutes a deliberate indifference for the purposes an Eighth Amendment violation.  *Spruill*, 372 F.3d at 237.  *See also Dumer v. O'Caroll*, 991 F.2d 64, 68-9 (3d Cir. 1993) (recognizing that there is a valid claim where the failure to provide adequate medical care is deliberate and motivated by "non-medical factors").  However, medical negligence or mistreatment claims against a medical defendant do not necessarily rise to the level of deliberate indifference.  *See e.g., Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (recognizing "the well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference'"); *Davis v. Collins*, 230 F. App'x 172, 174 (3d Cir. Pa. 2007) ("Allegations of medical malpractice are not sufficient to establish an Eighth Amendment

---

[4]  Each of the "Sick Call" requests attached to Plaintiff's Complaint contains a response from prison staff that clearly addressed the particular request. (Compl. Ex. B).  The same further demonstrate that throughout the relevant period of time, Plaintiff was being seen and being treated with medication for his dental issues.  (Compl. Section III; Ex. B, pp. 6, 8).  *See Washington v. Warden*, Civ. No. 13-2820, 2013 U.S. Dist. LEXIS 174753, at *18 (M.D. Pa. Nov. 20, 2013) (recognizing that "in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.").

violation for inadequate medical care."); *Thomas v. Zinkel*, 155 F.Supp.2d 408, 411 (E.D. Pa

2001) (finding that while "Plaintiff may have disagreed with aspects of his medical care, he

makes no allegation of intentionally injurious conduct or any sort of unconscionable acts").   In

this case, Plaintiff's Complaint contains no facts to establish any connection between the

treatment he received and the mental states of the medical defendants.  As previously discussed,

Plaintiff filled out multiple Sick Call requests and Inmate's Requests, and was not ignored when

it came to being seen by Dr. Kalteski and other medical personnel provided by Defendant PCM.

Even taking as true Plaintiff's claim that Dr. Kalteski told him he "did not do plates" but

instead, extracted teeth during emergencies, this does not constitute a disregard of excessive risk

that could equate to a deliberate indifference.  Plaintiff provides no factual allegations that Dr.

Kalteski refused to treat him or delayed in treating him.  Instead, Plaintiff's allegations constitute

a medical disagreement between a licensed dentist and a layperson.  *See Davis*, 230 F. App'x at

174 (finding that "the decision not to perform the apicoectomy only constituted a medical

disagreement regarding Davis' dental treatment" and that the same "is insufficient to establish a

constitutional claim.").  Because Plaintiff has done nothing more than assert threadbare

allegations that Defendants Kalteski, Heffner and PMC showed "deliberate indifference"

towards his medical needs, the same shall be dismissed.

### b.  Warden Dale Meisel

When determining whether a non-medical official can be liable for deliberate

indifference towards a prisoner, courts will look to whether prison authorities "deny reasonable

requests for medical treatment . . . and such denial exposes the inmate to 'undue suffering or the

threat of tangible residual injury.'"  *Monmouth County Correctional Institutional Inmates v.*

*Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citing *Estelle*, 429 U.S. at 105). Deliberate

indifference in this context is further demonstrated "[w]hen … prison authorities prevent an

inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Deficient prison policies or system deficiencies can be the basis for a claim of deliberate indifference with regard to allegedly inadequate medical treatment. *See Pierce*, 612 F.2d at 763 (recognizing that "systemic deficiencies in staffing which effectively deny inmates access to qualified medical personnel for diagnosis and treatment of serious health problems have been held to violate constitutional requirements"). A four-part test is utilized to determine whether a supervisor can potentially be held liable based on prison "policies or practices." *Sharpe v. Medina*, 450 F. App'x 109, 112-13 (3d Cir. 2011). Specifically, a showing must be made that: "(1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. Pa. 2001). It is the prisoner's burden to demonstrate a deliberate indifference in a prison's policymaking. *Id.* at 133. Moreover, "using circumstantial evidence to prove deliberate indifference requires more than evidence that the defendants *should have* recognized the excessive risk and responded to it; it requires evidence that the defendant *must have* recognized the excessive risk and ignored it." *Id.* at 138 (emphasis added).

Deliberate indifference will not be shown against a non-medical defendant when there is a mere failure to respond directly to the medical complaints of a prisoner who was already receiving attention by medical staff. *Rodriguez v. Sec'y Pa. Dep't of Corr.*, 441 F. App'x 919, 923 (3d Cir. 2011) (finding that the defendants' decisions and responses to a prisoner's complaints were based upon medical records and did not constitute deliberate indifference); *see*

*also Durmer*, 991 F.2d at 69 (where a plaintiff was receiving care from the prison doctor, no deliberate indifference existed simply because of the plaintiff's disagreements or medical complaints with his care and the defendant's failure to respond directly to them).

Plaintiff herein cannot show: (1) that providing an alternative treatment to a new dental plate constituted a "policy" and that Meisel knew said "policy" would create an unreasonable risk; (2) that Defendant Meisel was aware of any unreasonable risks allegedly created by the so-called "policy"; (3) that Defendant Meisel was indifferent to the alleged risk; and (4) that Plaintiff sustained injuries as a result of the purported "policy." In fact, Defendant Meisel responded in writing to Plaintiff by stating "It appears to me that our contracted medical provider is not ignoring you. The medical issues you describe appear to be of long standing duration." (Compl. Ex. E). Plaintiff's conclusory allegations to support his claim that Defendant Meisel should have recognized an excessive risk and acted on it, are unfounded. *See Farmer*, 511 U.S. at 834 (recognizing that "a prison official must have a 'sufficiently culpable state of mind'" to prove deliberate indifference) (internal citation omitted). *See also Davis v. Thomas,* Civ. No. 13-3880, 2014 U.S. App. LEXIS 4420, at *11 (3d Cir. Pa. Mar. 10, 2014) ("Correctional defendant-administrators who are not themselves physicians cannot 'be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'") (citing *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir. 1993)).

Again, the issue involved herein boils down to nothing more than a disagreement regarding medical judgments, which does not constitute an actionable Eighth Amendment violation. *See James v. Pa. Dep't of Corr.,* 230 F. App'x 195, 197 (3d Cir. 2007) (recognizing that a prisoner's "preference alone cannot establish deliberate indifference as such second-

guessing is not the province of the courts."); *Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.") (internal quotation marks omitted); *West v. Varano*, Civ. No. 10-2637, 2013 U.S. Dist. LEXIS 123882, at *35 (M.D. Pa. Aug. 1, 2013) ("[W]here a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983.").

## V.        CONCLUSION

For the reasons set forth hereinabove, Defendants' Motions to Dismiss shall be granted. Because any attempt at amendment would be futile, Plaintiff's Complaint is dismissed with prejudice.[5]

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II        J.

---

[5] This Court notes that subsequent to completion of briefing regarding Defendants' Motions to Dismiss, Plaintiff filed two additional documents pertaining to his claims.  The first document disputes information Plaintiff received from Defendants Heffner and Meisel regarding the non-existence of a PCM Grievance Form.  Apparently, such a form does now exist.  (Doc. No. 23). Plaintiff claims LCP should not have handled his grievances regarding the care he received because PCM's form was intended specifically for medical complaints.  For the reasons set forth hereinabove, the existence of this form does not change the outcome of Plaintiff's case.

The second document submitted by Plaintiff informs the court that subsequent to submission of all briefing in this matter, Plaintiff chipped a tooth.  Plaintiff claims Defendant Kalteski put in a temporary filling but the same came out, allegedly resulting in an infection and pain.  (Doc. No. 24).  Plaintiff attributes this most recent event to the purported "policy" of not replacing broken dental plates.  Again, for the reasons set forth hereinabove, this supplemental information does not change the outcome of Plaintiff's case.